IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chernou Cab Corp.                          :
                                           :
              v.                           : No. 324 C.D. 2016
                                           : Submitted: August 12, 2016
Philadelphia Parking Authority,            :
              Appellant                    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: December 2, 2016

The City of Philadelphia Parking Authority (Authority) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) that reversed a decision of the Authority's Taxicab and Limousine Division. In that decision, the Authority's Hearing Officer granted the Authority's motion to amend a citation issued to Chernou Cab Corp. (Chernou) to add another violation of law. The trial court held that the Hearing Officer lacked jurisdiction to amend the citation. We affirm in part and reverse in part.

Chernou owns and operates medallion taxicabs in Philadelphia. On July 3, 2014, Inspector James Burke (Burke), who worked for the Authority's Taxicab and Limousine Division, inspected Chernou's medallion taxicab P-929. Burke's inspection revealed that the GPS component of the taxicab meter was not operable. Burke then issued a citation against Chernou for "incomplete communication system," citing to "1017.5," *i.e.*, Section 1017.5 of the Authority's

regulations in Title 52 of the Pennsylvania Code.[1]  The citation stated that the taxicab's GPS system could not be turned on; imposed a penalty of $350; and placed the taxicab out of service.  Chernou timely contested the citation.

On April 28, 2015, a hearing was held before Hearing Officer Sheldon C. Jelin.  At the hearing, the Authority moved to amend the citation to add a violation of the regulation that requires an operating GPS.  52 Pa. Code §1017.24.[2] Chernou objected, asserting that an amendment would violate its due process rights.  Although the Hearing Officer offered to continue the matter in order to give Chernou further opportunity to prepare a defense to the amendment, Chernou rejected the offer and elected to proceed with the hearing.

At the hearing, Inspector Burke testified about the citation he issued to Chernou.  Burke explained that when he approached the taxicab, he noticed that the GPS system was not on.  He further stated that when he tried to turn on the GPS system, he found that the power button was missing.  Burke explained that he gave the driver ten minutes to make the GPS system work, but he was unable to do so.  Burke then issued the citation.  The Authority also submitted into evidence the inspection report, along with photos of the vehicle, meter system, and the GPS device.

---

[1] *See* 52 Pa. Code §1017.5.  The relevant portion of Section 1017.5 is set forth in the opinion, *infra.*

[2] It states, in relevant part:

> (d) The meters in every taxicab must have properly attached and approved receipt printers specified by the Authority in § 1017.23 (relating to approved meters), including the following: … (2) The ability to provide drivers with driving directions through a global positioning system. (3) Global positioning system tracking to monitor the location of each taxicab and provide driving directions to the taxicab driver.

52 Pa. Code §1017.24(d)(2)-(3).

The Hearing Officer found Burke's testimony credible; he also found that Chernou was not prejudiced by the Authority's motion to amend the citation. The Hearing Officer granted the Authority's motion to amend the citation to include a violation of Section 1017.24 and further concluded that Chernou had violated both Sections 1017.5 and 1017.24. Chernou appealed to the trial court, which reversed.

The trial court held that the Authority lacked authority to amend its citation "once the ticket has been issued and the violator has been given the option to pay the fine, pay a lesser fine upon correction of the violation listed on the citation, or [has] contest[ed] the citation to a … hearing officer." Trial Court op., 4/29/16, at 2-3. The trial court concluded that under the regulatory scheme, the hearing officer is confined to adjudicating the code violations listed on the contested citation. The hearing officer cannot "use the Rules of Criminal and Civil Procedure governing common law court proceedings to confer jurisdiction upon himself to hear a code violation not contained within the original citation." Trial Court op., 4/29/16, at 3.

Section 1017.5, which was identified in the citation, requires "a meter approved for use as provided in Section 1017.23...." 52 Pa. Code §1017.5(b)(13). However, Section 1017.5 does not refer to a GPS system. By contrast, Section 1017.24 requires an operating GPS on every taxicab's meter. 52 Pa. Code §1017.24(d)(2)-(3). Because Section 1017.5 and Section 1017.24 contain different elements, the trial court reasoned that the addition of another legal basis to the citation had to be done before any statute of limitations expired, which the court held to be within 30 days of the citation's issuance. In this regard, the trial court

3

drew on the deadline for initiating summary offenses at 42 Pa. C.S. §5553.[3] The trial court also drew on the Judicial Code's requirement that modification of an order must be accomplished within 30 days after its entry. 42 Pa. C.S. §5505.[4] Accordingly, the trial court reversed the Hearing Officer's decision, and the Authority appealed to this Court.[5]

On appeal, the Authority argues that the trial court erred in concluding that the Hearing Officer lacked authority to amend Chernou's citation. The Authority also argues that the trial court erred in concluding that Sections 1017.5 and 1017.24 contained different elements or constituted different substantive code violations. The Authority asserts that by failing to have an operative GPS on its meter, Chernou violated both Sections 1017.5 and 1017.24. We address these issues *seriatim*.

The Authority first argues that the trial court erred in holding that the Hearing Officer lacked the authority to allow an amendment to the citation. The Authority contends that because a citation is not an "order," but a type of complaint, the Judicial Code provisions cited by the trial court had no relevance. Chernou counters that the Authority's arguments should be deemed waived

---

[3] Section 5553 provides, in relevant part, that "[w]here a police officer reasonably believes that there are multiple summary offenses arising out of the same conduct … and that an offense under 75 Pa. C.S. § 1543 (relating to driving while operating privilege is suspended or revoked) has occurred, proceedings on all summary offenses arising from the conduct … must be commenced within 30 days after the commission of the alleged offenses .…" 42 Pa. C.S. §5553(c)(3).

[4] Section 5505 provides: "Except as otherwise provided…, a court upon notice to the parties may modify or rescind any order within 30 days after its entry…." 42 Pa. C.S. §5505.

[5] In evaluating the decision of an agency, where a complete record is made before that agency, our standard of review is whether the agency committed an error of law and whether the material findings of fact are supported by substantial evidence. *Piatek v. Pulaski Township*, 828 A.2d 1164, 1170 (Pa. Cmwlth. 2003).

4

because they were never raised before the trial court. Chernou Brief at 7. Even if these arguments have not been waived, Chernou argues, the trial court did not abuse its discretion in imposing a 30-day statute of limitations to a requested amendment to a citation. *Id*. at 7-8.

We begin with an examination of the law regarding the operation of taxicabs in Philadelphia. Traditionally, the Public Utility Commission regulated the taxicab industry in the Commonwealth of Pennsylvania. In 2004, the General Assembly enacted Act 94,[6] which transferred the responsibility for overseeing the taxicab industry in Philadelphia to the Authority. *See* 53 Pa. C.S. §§5701-5745. With regard to the Authority's handling of alleged violations, the Parking Authority Law states, in relevant part, as follows:

> §5705. Contested complaints
>
> (a) Adjudication.—Contested complaints brought before the authority alleging violations of this chapter or rules and regulations promulgated by the authority pursuant to this chapter shall be assigned by the authority to a hearing officer for adjudication…. Following the taking and receiving of evidence, the hearing officer shall issue a decision which determines the merits of the complaint and assesses a penalty if warranted. The hearing officer may require the filing of briefs prior to issuing a decision. The hearing officer's decision shall not be subject to exception or administrative appeal. In its discretion, the authority may exercise review of a hearing officer's decision within 15 days of the date of issuance. If the authority does not perform a timely review of a hearing officer's decision, the decision will become a final order without further authority action.[7] *The authority may establish orders or regulations which designate rules and procedures for the adjudication of complaints brought pursuant to this chapter.*

---

[6] Act of July 16, 2004, P.L. 758, No. 94.

[7] This is what occurred in the instant case.

53 Pa. C.S. §5705 (emphasis added).

Under the Parking Authority's regulation, a hearing officer is permitted "at any stage of an action or proceeding [to] disregard an error or defect of procedure which does not affect the substantive rights of the parties." 52 Pa. Code §1001.3(a). This includes the hearing officer's ability to amend pleadings:

> (a) *Generally.* A modification of or supplement to an application, complaint, petition or other pleading shall be deemed as an amendment to the pleading, and must comply with the requirements in this chapter relating to the pleading amended.
>
> (b) *Limitation.* An amendment to a pleading may not be filed more than 20 days after the date an answer or other response to the original pleading was due to be filed with the Clerk, *unless directed or permitted by the Authority or the presiding officer after opportunity for all parties to be heard thereon*.

52 Pa. Code §1005.61 (emphasis added). A "pleading" in a matter before the Authority includes a "[f]ormal complaint, answer, new matter and reply to new matter." 52 Pa. Code §1005.1(a)(2). A formal complaint may be issued "*through a form citation* for any violation of the act, this part or order of the Authority." 52 Pa. Code §1005.13(a) (emphasis added). Accordingly, a form citation falls within the definition of a "pleading."

We agree with the Authority that the Hearing Officer has discretion to permit amendments to a citation. The regulation authorizes a hearing officer to permit an amendment to a pleading (such as a form citation), even if the amendment is filed beyond the 20-day deadline, so long as the Hearing Officer provides an opportunity for all the parties to be heard. 52 Pa. Code §1005.61. Here, before granting the Authority's motion to amend, the Hearing Officer offered Chernou the opportunity to prepare a defense to the amendment, but Chernou

6

refused the offer. Further, the original citation stated that the violation for "incomplete communication system" was based on the fact that the GPS system could not be turned on. Reproduced Record at 13a (R.R. ___). The Hearing Officer did not abuse his discretion in granting the Authority's request to amend the citation. The omission of the precise violation from the citation was a procedural error that the Hearing Officer was permitted to correct. 52 Pa. Code §1001.3(a).[8]

We conclude that the Authority's arguments were not waived because the central issue has always been whether the Hearing Officer has the discretion and authority to amend form citations. We reject Chernou's argument that the trial court properly imposed a 30-day statute of limitations to a citation amendment because, as discussed earlier, a form citation is a type of "pleading" that is subject to the regulations applicable to pleadings.

---

[8] Recently, this Court reached the same result in a factually similar case. In *Yellow 2000 of Philadelphia v. Philadelphia Parking Authority* (Pa. Cmwlth., No. 2036 C.D. 2015, filed July 11, 2016) (*Yellow 2000*), the Court of Common Pleas of Philadelphia County reversed an order issued by the City of Philadelphia Parking Authority (Authority)'s Taxicab and Limousine Division that granted the Authority's motion to amend a citation against Yellow 2000 of Philadelphia (Yellow) to include a violation of 52 Pa. Code §1017.24. The Taxicab and Limousine Division further found that Yellow violated 52 Pa. Code §1017.24. The Authority appealed from the order of the Court of Common Pleas, and this Court reversed, finding that the hearing officer at the Taxicab and Limousine Division had discretion to permit an amendment to the citation, and the amendment did not violate Yellow's due process rights. *Yellow 2000* slip op. at 4-6.

Chernou, admitting that this appeal involves similar issues to *Yellow 2000*, urges this Court to take "a fresh look." Chernou Brief at 4, n.1. Based on the reasons stated in this opinion, we uphold the amendment to the citation and reinstate the Hearing Officer's finding of a violation of Section 1017.24. We, however, find that Chernou did not violate Section 1017.5. Accordingly, we affirm the trial court's order in part and reverse in part.

The Authority argues, next, that the trial court erred in concluding that Sections 1017.5 and 1017.24 contained different elements and were bases for different substantive code violations. Authority Brief at 20. The Authority argues that its regulation specifically requires taxicabs to have meters with integrated GPS functionality, and Chernou did not meet this requirement. Section 1017.5 lists general vehicle standards, including that a taxicab must operate with an approved meter system, while Section 1017.24 identifies what a meter system must include to be approved. Accordingly, the Authority argues that "the failure to operate a taxicab with a functional and approved meter, including a functional GPS system, is a violation of § 1017.5." *Id*.

Chernou responds that there could not have been a violation of Section 1017.5 because this provision makes no reference to a GPS; further, its taxicab was equipped with an approved meter. Chernou Brief at 8-9. Chernou also argues that the evidence was inadequate to support a violation of Section 1017.24 because that provision does not require that the GPS be hard-wired into the meter. Chernou asserts that the issuing Inspector should have inquired into whether the driver had a GPS elsewhere in the taxicab such as on his cell phone. Chernou does not dispute the fact that the GPS component of its meter was not operable at the time of the inspection.

We begin with a review of the applicable regulations. Section 1017.5 sets forth more than 26 requirements for taxicabs. With respect to meters, it provides as follows:

> (b) *Standard taxicab vehicle requirements*. Each taxicab is subject to the following requirements: … (13) A taxicab must be equipped with a meter approved for use as provided in §1017.23 (relating to approved meters) and may not be

8

equipped with a device that has the capability of allowing the meter to register a nonapproved rate.

52 Pa. Code §1017.5(b)(13). In turn, Section 1017.23 provides that "[t]he Authority will maintain a list of meters approved for use in taxicabs. The list of approved taxicab meters may be obtained from the Authority's website at www. philapark.org/tld." 52 Pa. Code §1017.23. Section 1017.24 identifies the required functions for a taxicab meter. It provides in relevant part:

> (d) The meters in every taxicab must have properly attached and approved receipt printers specified by the Authority in §1017.23 (relating to approved meters), including the following: … (2) The ability to provide drivers with driving directions through a global positioning system. (3) Global positioning system tracking to monitor the location of each taxicab and provide driving directions to the taxicab driver.

52 Pa. Code §1017.24(d)(2)-(3).

We agree with Chernou that it did not violate Section 1017.5, which requires only a meter "approved for use as provided in §1017.23." 52 Pa. Code §1017.5(b)(13). Section 1017.23, which does not refer to a GPS or Section 1017.24, requires the Authority to maintain a list of meters approved for use in taxicabs and publish the list on its website. 52 Pa. Code §1017.23. Nothing in the record suggests that Chernou was using a meter that was not on the Authority's approved list at the time the citation was issued. Rather, as the Authority contends, "[t]he violation has always been based on the undisputed fact that Chernou's taxicab was providing service in Philadelphia with a meter system that did not have functioning GPS ability." Authority Brief at 10. In other words, Sections 1017.5 and 1017.24 provide separate and distinct requirements: (1) a taxicab must be equipped with a meter approved for use by the Authority in accordance with Section 1017.5, and (2) the taxicab operator should ensure that all of the required

9

functions on its meter are operative in order to satisfy Section 1017.24. Violating the latter provision does not necessarily imply a violation of the former.

We do agree with the Authority, however, that Chernou violated Section 1017.24. We are not persuaded by Chernou's argument that other types of GPS devices such as a driver's cell phone will satisfy Section 1017.24. Section 1017.24 reads: "*[t]he meters* in every taxicab must have properly attached and approved receipt printers … including the following … (2) the ability to provide drivers with driving directions through a global positioning system." 52 Pa. Code §1017.24(d)(emphasis added). Section 1017.24 specifically requires the meter, not the taxicab, to have a functioning GPS. By failing to have an operative GPS on its meter, Chernou violated Section 1017.24.

Lastly, we address a due process issue that Chernou raised below but which the trial court did not address.[9] Chernou argues that the original citation was defective on its face because it cited to an incorrect code provision. Relying on *In Re: The Keg*, 23 Pa. D. & C. 3d 84 (Mar. 9, 1981), Chernou argues that the proceedings on its violations have the "earmarks of a summary criminal offense" because of the Authority's ability to impose a fine. Chernou Brief at 5. Chernou urges this Court to find that the citation did not provide adequate notice under the Rules of Criminal Procedure.[10] *Id.* at 5-6. Chernou asserts that the Authority cannot cure a defective citation by amending it at the hearing. The Authority responds that Chernou's due process rights were not violated because Chernou was

---

[9] We consider the issue only because the Authority raises it in its appellate brief.

[10] Specifically, Chernou cites to 234 Pa. Code §403, which provides, in relevant part, that every citation shall contain ... "a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged." 234 Pa. Code §403(A)(6).

10

on notice of the nature of the violation when the citation was issued. Even if Chernou was denied notice, the Authority argues, there was still no due process violation because Chernou failed to allege any harm it suffered. Authority Brief at 11-14.

Procedural due process requires that "an individual be given adequate notice of the charges against the individual and an opportunity to be heard." *Dunn v. Department of Transportation*, *Bureau of Driver Licensing*, 819 A.2d 189, 192 (Pa. Cmwlth. 2003)(citing *Telang v. Bureau of Professional and Occupational Affairs*, 751 A.2d 1147, 1150 (Pa. 2000)). Due process is "not an inflexible, technical conception with a fixed meaning unrelated to the particular circumstances of a case." *Id*. Further, as this Court has explained, "the mere demonstration of a potential procedural error, without also alleging a resulting harm, is not sufficient reason to disturb an agency adjudication." *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 719 (Pa. Cmwlth. 2010).

We agree with the Authority that the amendment did not violate Chernou's due process rights. First, the citation stated that it was issued for an inoperative GPS, which informed Chernou, immediately, of the substance of the charge. Second, the Hearing Officer offered Chernou the opportunity to postpone the hearing in light of the Authority's amendment. Chernou refused that offer. Finally, Chernou has not demonstrated a harm resulting from this procedural error.

*Keg*, 23 Pa. D.&C. 3d 84, is distinguishable from the case at bar on its facts. In *Keg*, the petitioner, a tavern owner, held a "ladies night" where he charged two dollars to male patrons and one dollar to female patrons. The Liquor Control Board, on the basis of this event, issued the petitioner a citation, asserting

that the petitioner violated the Liquor Code.[11] The petitioner challenged that the citation violated his due process rights because it was impermissibly vague. The court in *Keg* found that the citation issued to the petitioner did not even contain a reference to the fee charge. "In fact, until the hearing, the court had no intimation of the meaning of the language." *Keg*, 23 Pa. D.&C. 3d at 86. The court thus concluded that the citation could not have advised the petitioner of the nature of the alleged Liquor Code violations. *Id.*

Here, the original citation noted that the alleged violation was for an "incomplete communication system" based on the fact that the GPS system was inoperative. Unlike the Liquor Code citation in *Keg*, the citation advised Chernou of the precise nature of the conduct. In short, even though the original citation cited the incorrect code provision, the explanatory notes therein put Chernou on notice as to the nature of the alleged violation, thus fulfilling due process.

Accordingly, because the Hearing Officer had the authority to amend the form citation and gave both parties an opportunity to be heard, we reverse the trial court's order in part and reinstate the Hearing Officer's finding of a violation of Section 1017.24. However, because there was no evidence that Chernou operated its taxicab without an approved meter system, we affirm the trial court's order insofar as it reversed the Hearing Officer's determination that Chernou violated Section 1017.5. We remand this matter to the trial court with instructions to remand to the Authority to determine the amount of the penalty to be imposed on Chernou for its violation of Section 1017.24.

_____
MARY HANNAH LEAVITT, President Judge

_____

[11] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chernou Cab Corp.                          :
                                           :
          v.                               :  No. 324 C.D. 2016
                                           :
Philadelphia Parking Authority,            :
                Appellant                  :

**O R D E R**

AND NOW, this 2nd day of December, 2016, it is hereby ORDERED that the order of the Court of Common Pleas of Philadelphia County, dated February 5, 2016, in the above-captioned case is hereby REVERSED in part and AFFIRMED in part in accordance with the attached opinion. The matter is REMANDED to the Court of Common Pleas of Philadelphia County with instructions to remand to the Philadelphia Parking Authority to determine the amount of the penalty to be imposed on Chernou Cab Corp. for its violation of Section 1017.24.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

Chernou Cab Corp.                                :
                                                 :
          v.                                     : No. 324 C.D. 2016
                                                 : Submitted:  August 12, 2016
Philadelphia Parking Authority,                  :
                    Appellant                    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


**DISSENTING OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED:  December 2, 2016**


          I must respectfully dissent.  As stated by the trial court, the original citation in this matter was issued on July 3, 2014.  The motion to amend the citation was made at the hearing on April 28, 2015.  The Authority had 10 months to review the correctness of this citation, yet did not make a move to amend until the time of the hearing.  After such a delay, it is unfair to allow the Authority a second bite of the apple and require Chernou Cab to appear again for another hearing.

          Chernou Cab would not, and should not, be allowed 10 months in which to timely contest the violation, nor should the Authority be allowed 10 months to correctly inform Chernou Cab as to the precise nature of the violation.  Moreover, I disagree that the Authority's failure to identify the correct code

provision is a mere procedural error which does not affect substantive rights; the explanatory note on the face of the citation cannot put Chernou Cab on notice as to the factual basis for the charge when the facts stated are of no moment to the violation alleged.

_____
**JAMES GARDNER COLINS, Senior Judge**